UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-20674-CR-GAYLES

UNITED STATES OF AMERICA,

vs.

JOSHUA RYAN JOLES, et al.,

    Defendants.
_____/

### DEFENDANT'S CORRECTED OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Defendant Joshua Ryan Joles hereby files his Objections to the Presentence Investigation Report.

**PART A. THE OFFENSE**

Mr. Joles generally objections to all representations made in the PSR that he was somehow involved in what I will refer to as the acquiring, repacking, and reselling of diverted pharmaceuticals. While Mr. Joles was aware that he was purchasing diverted pharmaceuticals, he never knew what Salemi and the others in Miami were doing. He was a buyer in the distribution chain. I have copied and pasted the relevant paragraphs from Mr. Joles' Factual Proffer, which explains his role. [D.E. 294].

7. Salemi provided false pedigrees and templates for the co-conspirators to use to make false pedigrees for the shipments they sent to LLC, and he e-mailed offer sheets with prices and quantities and the LLC sales orders to them. Joles knew that pedigrees were required to accurately identify the sources of each shipment of drugs and the parties to all transfers of them. Salemi discussed with Joles the type of information that would need to be included in their pedigrees to make it appear that they had legitimate origins.

8. Beginning around 2015, all the pedigrees provided to Joles by WGI and DLR showed that the drugs were purchased by those companies directly from the manufacturers, even though the great majority of them were not from legitimate manufacturers or wholesalers. Salemi had arranged for the shipments to all be sent directly from Miami to LLC in Arizona via FedEx. He sometimes used return addresses on the packages belonging to various legitimate South Florida companies that had nothing to do with his business. However, after the various Miami-area addresses on WGI shipments created issues at LLC, Joles advised Salemi that they could no longer operate that way and Salemi arranged to have the shipments sent first to his facility in Washington and then sent them from there to LLC.

Mr. Joles further notes that he was the CEO and minority shareholder of LLC Wholesale.

The following are specific objections and corrections:

1. Paragraph 10 contains a typographical error and should state "Wells Fargo Bank in."

2. Mr. Joles objects to Paragraph 19 as it misstates the facts. Mr. Joles did in fact eat a CBD gummy. It was not a gummy containing THC. Mr. Joles took the

CBD gummy for medicinal reasons.  Specifically, Mr. Joles was suffering from great pain due to his Bell's Palsy.

3. Mr. Joles objects to Paragraph 21.  LLC Wholesale sold a wide variety of prescription medicines at various price points and was not limited to sales of "expensive prescription drugs."

4. Mr. Joles objects to Paragraph 25 to the extent it implies he was involved in the altering of prescription bottle labels.  Moreover, Mr. Joles was not personally involved in and had no knowledge of the people or places where prescription drugs were repackaged and false labels were created.

5. Mr. Joles objects to Paragraph 28 to the extent his name is included in the first sentence.  Mr. Joles did not form or purchase a company to market drugs. LLC Wholesale was a long-standing business operating prior to his taking a minority interest.

6. Mr. Joles objects to the last sentence in Paragraph 30.  The sentence should be clarified to state that Salemi provided LLC/Joles purchase orders to the co-defendants.  Joles had no role in instructing the co-defendants.

7. Mr. Joles objects to Paragraph 34 as it doesn't accurately reflect the facts. David Ramirez Garcia, Sr. advised Joles and Bill Mulligan that WGI should not send medicines with Miami based shipping labels since WGI was based in Redmond, WA.  As a result, new operating procedures were put in place that

products could only be accepted when shipped from the same state as the license holder's location.

8. Mr. Joles objects to Paragraph 40 to the extent it implies that Mr. Joles was involved in the cleaning and repacking of drugs.

9. Mr. Joles objects to Paragraph 43 and requests that it be clarified to state that Salemi initiated the communications regarding false pedigrees in 2018.

10. Mr. Joles objects to Paragraph 45 to the extent it states that he maintained control of the warehouse in that capacity. Mr. Joles was not in charge of the warehouse.

11. Mr. Joles objects to Paragraph 54. This paragraph should reflect that LLC Wholesale also sold legitimate drugs.

12. Mr. Joles objects to Paragraph 55. Specifically, one sentence reads, "Joles often demanded that pedigrees be altered to match what he received." It should read Joles communicated to Salemi that he could only accept bottles of medicine if the bottles received matched the paperwork in terms of number, serial numbers, and lot numbers.

13. Mr. Joles objects to Paragraph 65. Purchase orders from LLC Wholesale were sent to Salemi by email.

14. Mr. Joles objects to Paragraph 71 to the extent it implies Joles was involved in creating straw accounts.

15.     Mr. Joles objects to Paragraph 77.  Specifically, the second to the last sentence states that JJoles Enterprises conducted no legitimate business.  JJoles Enterprises was a consulting company.

16.     Mr. Joles objects to Paragraph 86 to the extent it refers to Joles as the general manager.

**OFFENSE LEVEL COMPUTATION**

Generally, Mr. Joles' plea agreement and factual proffer provide the foundation for the sentencing calculation in this case.  Mr. Joles objects to any calculation that differs from what is provided for in the plea agreement.  Moreover, the proper calculation of the guidelines can be one of two calculations.  Pursuant to 2B1.1(b)(1) the base level offense is 6, plus 24 levels for the loss amount, and 4 levels pursuant to 2B1.1(b)(8)(B) for supply chain.  Alternatively, under 2S1.1 (a)(2) the base level offense is 8, plus 24 levels for the loss amount, and 2 levels for a conviction under money laundering under 2S.1.1(b)(2)(B).  Under either calculation, the adjusted offense level is 34.  From this adjusted offense level, there should be an additional 3 level deduction for acceptance of responsibility.  As such, the Total Offense Level is 31.  Any other calculation results in double counting.

17.     Mr. Joles objects to Paragraphs 118-120 and the base offense level calculation contained therein. Mr. Joles refers to the above calculation as the correct calculation.  Further, Mr. Joles objects to the sophisticated means enhancement

contained in Paragraph 120 and repeated in Paragraph 122. Mr. Joles' objections is twofold. First, the enhancement should not apply. Second, the enhancement should not be counted twice. Mr. Joles provides a detailed objection to sophisticated means enhancement below.

18. Mr. Joles objects to Paragraph 121 as the calculation is inconsistent with the proper calculation of the guidelines and refers to the general objection made supra.

19. Mr. Joles objects to Paragraph 122. As noted in Section 18, the PSR repeats the sophisticated means enhancement twice. Additionally, Mr. Joles, joined by the government, objects to attributing to the defendant either sophisticated means or sophisticated laundering enhancements on the facts of the defendant's case and consistent with the resolution of those issues in other sentencings in this case. The fraud and related conduct attributed to Joles, while it occurred over several years was repetitive, does not meet the required level for guideline enhancement for sophistication; the enhancements were found similarly inapplicable to the other defendants involved in the money laundering conspiracy in this case and should not be applied here. The same conclusion of no-applicable sophistication enhancement was made as to the other defendants in this case, with the government similarly agreeing that no sophisticated means or laundering enhancements were warranted in this case.

20. Mr. Joles objects to Paragraph 40, the Adjusted Offense Level should be 34 as discussed above in the general objection.

21. Mr. Joles objects to Paragraph 130, the Total Offense Level should be 31 as discussed above in the general objection.

**PART C. OFFENDER CHARACTERISTICS**

22. Mr. Joles requests that Paragraph 137 be clarified. Mr. Joles' girlfriend's name should be spelled Kristin.

23. Mr. Joles requests that Paragraph 140 be clarified to read that he moved residences because he was playing on different Hockey teams.

24. Mr. Joles objects to paragraph 151. As previously noted, he ingested something containing CBD and not THC. The product did not contain intoxicating properties.

25. As to paragraph 156, Mr. Joles notes that he is not aware of any Florida license under his name. The license could belong to another Josh Joles.

26. Mr. Joles requests that Paragraph 166 be clarified to reflect his time as a salesman at LLC Wholesale between 2009 to 2013.

27. Mr. Joles objects to Paragraph 23 to the extent it lists a WellsFargo account. That account has been closed for some time.

28. Mr. Joles objects to Paragraph 174. Mr. Joles only holds one credit card at this time.

29. Mr. Joles objects to Paragraph 175. Mr. Joles' car payments should be included. He has two car payments: (1) $1945.51 and (2) $2562.50.

Respectfully submitted,

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Telephone: (305) 537-9565
Facsimile: (305) 537-9567

By: */s/ Marissel Descalzo*
    Marissel Descalzo
    Florida Bar No. 669318
    mdescalzo@tachebronis.com
    service@tachebronis.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court, served on Probation, and on all counsel of record this 17th day of July, 2021.

By: */s/ Marissel Descalzo*
    Marissel Descalzo, Esq.

9